1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| BOBBIE A. TYLER, | ) | Case No. ED CV 11-0441 JCG |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

19

## I.

20

## INTRODUCTION AND SUMMARY

21        On March 18, 2011, plaintiff Bobbie A. Tyler ("Plaintiff") filed a complaint

22 against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social

23 Security Administration, seeking review of a denial of supplemental security income

24 benefits ("SSI").  [Docket No. 3.]

25        On September 19, 2011, Defendant filed his answer, along with a certified

26 copy of the administrative record.  [Docket Nos. 12, 13, 14.]

27        In sum, having carefully studied, *inter alia*, the parties' joint stipulation and

28 the administrative record, the Court concludes that, as detailed below, the

1   Administrative Law Judge ("ALJ") improperly discounted Plaintiff's subjective

2   complaints.  The Court thus remands this matter to the Commissioner in accordance

3   with the principles and instructions enunciated in this Memorandum Opinion and

4   Order.

5   **II.**

6   **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

7   Plaintiff, who was 49 years old on the date of her most recent administrative

8   hearing, has completed the eighth grade.  (*See* Administrative Record ("AR") at 100,

9   498, 506.)

10   On November 28, 2005, Plaintiff filed for SSI, alleging that she has been

11   disabled since May 15, 1990 due to headaches, heel spurs, a dislocated hip joint, a

12   pinched nerve in her neck, asthma, and high blood pressure.  (*See* AR at 83, 90,

13   100.)

14   On November 29, 2007, Plaintiff, represented by counsel, appeared and

15   testified at a hearing before an ALJ.  (AR at 473-97.)  The ALJ also heard testimony

16   from Stephen M. Berry, a vocational expert ("VE").  (*Id.*; *see id.* at 51.)

17   On January 30, 2008, the ALJ denied Plaintiff's request for benefits.  (AR at

18   51-63.)

19   Plaintiff appealed and, on February 25, 2010, the Appeals Council vacated the

20   decision and remanded the case to the ALJ for further proceedings.  (*See* AR at 44-

21   46.)

22   On July 19, 2010, Plaintiff, represented by counsel, appeared and testified at a

23   subsequent hearing before an ALJ.  (AR at 498-536.)  The ALJ also heard testimony

24   from Samuel Landau, M.D., a medical expert ("ME"), and Sandra Fioretti, a VE.

25   (*Id.*)

26   On September 9, 2010, the ALJ denied Plaintiff's request for benefits.  (AR at

27   9, 12-22.)  Applying the familiar five-step sequential evaluation process, the ALJ

28   found, at step one, that Plaintiff has not engaged in substantial gainful activity since

2

1    her application date.  (*Id.* at 14.)

2          At step two, the ALJ found that Plaintiff suffers from a severe impairments of

3    "morbid obesity; possible asthma; degenerative disc disease of the neck and back;

4    and arthritis of the knees and hips."  (AR at 14 (bold omitted).)

5          At step three, the ALJ determined that the evidence does not demonstrate that

6    Plaintiff's impairments, either individually or in combination, meet or medically

7    equal the severity of any listing set forth in the Social Security regulations.[1]  (AR at

8    16.)

9          The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

10   determined that she can perform light work except:

11                    she can stand and/or walk for 15 to 30 minutes at a time and can

12                    carry on this way for 2 hours out of an 8-hour period.  She can sit

13                    without restriction with normal breaks.  She can lift and/or carry

14                    10 pounds frequently and 20 pounds occasionally.  She requires

15                    the use of a cane as needed with a provision to elevate the legs up

16                    to 6 inches off the floor as needed.  She can occasionally stoop

17                    and bend.  She can climb stairs but not ladders.  Nor can she

18                    work at heights or balance.  She cannot squat, kneel, crawl, run

19                    or jump.  She is limited to occasional operation of foot controls

20                    or pedals.  Her work environment should be air conditioned and

21                    free of excessive inhaled pollutants.

22

23         [1]   *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

24

25         [2]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

28   2007).

3

1 (AR at 16 (bold omitted).)

2      The ALJ found, at step four, that Plaintiff has no past relevant work.  (AR at
3 21.)

4      At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found
5 that "there are jobs that exist in significant numbers in the national economy that
6 [Plaintiff] can perform," including small products assembler I, small products
7 assembler II, and bench assembler.  (AR at 21-22 (bold omitted).)  Thus, the ALJ
8 concluded that Plaintiff was not suffering from a disability as defined by the Act.
9 (*Id.* at 13, 22.)

10      Plaintiff filed a timely request for review of the ALJ's decision, which was
11 denied by the Appeals Council.  (AR at 3-5, 6.)  The ALJ's decision stands as the
12 final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

15      This Court is empowered to review decisions by the Commissioner to deny
16 benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
17 Administration must be upheld if they are free of legal error and supported by
18 substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*
19 *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
20 are based on legal error or are not supported by substantial evidence in the record,
21 the court may reject the findings and set aside the decision to deny benefits.
22 *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
23 242 F.3d 1144, 1147 (9th Cir. 2001).

24      "Substantial evidence is more than a mere scintilla, but less than a
25 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
26 evidence which a reasonable person might accept as adequate to support a
27 conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
28 at 459.  To determine whether substantial evidence supports the ALJ's finding, the

reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**ISSUES PRESENTED**

Three disputed issues are presented for decision here:

1.      whether the ALJ properly evaluated the medical evidence, (*see* Joint Stip. at 4-10);

2.      whether the ALJ properly assessed Plaintiff's credibility, (*id.* at 15-22); and

3.      whether the ALJ properly identified a significant number of occupations which Plaintiff can perform. (*Id.* at 24-26.)

Under the circumstances here, the Court finds the issue of the ALJ's evaluation of Plaintiff's credibility to be dispositive of this matter, and does not reach the remaining issues.

**V.**

**DISCUSSION AND ANALYSIS**

A.      Plaintiff's Credibility

Plaintiff argues that "the ALJ has manufactured what he states are inconsistencies between the evidence and Plaintiff's statements in his decision." (Joint Stip. at 16.) Plaintiff maintains that "[i]n fact, there are very few if any such 'inconsistencies'." (*Id.*)

/ / /

5

1        1.       The ALJ Must Provide "Clear and Convincing" Reasons For
2                 Discounting Plaintiff's Credibility

3        An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence
4   of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton*
5   *v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider the
6   following factors in weighing a plaintiff's credibility:  (1) his or her reputation for
7   truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the
8   plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or
9   her work record; and (5) testimony from physicians and third parties concerning the
10  nature, severity, and effect of the symptoms of which she complains. *Thomas v.*
11  *Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

12       Here, the ALJ did not find evidence of malingering.  (*See generally* AR at 12-
13  22.)  Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on
14  clear and convincing reasons.  *See Benton*, 331 F.3d at 1040.

15       2.       The ALJ Improperly Rejected Plaintiff's Subjective Complaints
16       The Court finds that the ALJ's reasons for discounting Plaintiff's credibility
17  are not clear and convincing and/or are not supported by the record.

18       First, the ALJ rejected Plaintiff's credibility based on inconsistencies between
19  Plaintiff's testimony and the record, and inconsistencies in her statements.  The ALJ
20  found inconsistencies in statements regarding "problems with [Plaintiff's] hands,"
21  her ability to manage funds, her daily activities, and her possession of a driver's
22  license.  (*See* AR at 17.)  The ALJ's reasons are not supported by substantial
23  evidence.  For instance, the ALJ reported that "there is *no* evidence in the record of
24  any hand problem."  (*Id.* (emphasis added).)  However, on November 19, 2006,
25  treatment notes indicated "left hand and arm pain with swelling," a problem Plaintiff
26  reported she "has had . . . for awhile."  (*Id.* at 236.; *see also id.* at 160-61 (treatment
27  note, dated on or about August 23, 2008, indicating "mild swelling to hands" and
28  joint pain in "knuckles [and] index fingers"), 346 (treatment note, dated January 13,

1  2005, noting pain in left arm and left hand), 381(treatment note, dated July 23, 2008,
2  indicating "swollen fingers"), 383 (treatment note, dated August 23, 2008, indicating
3  "hands tingling, swollen"), 392 (treatment note, dated October 27, 2008, diagnosing
4  "osteoarthritis of hands").)

5        Further, the ALJ noted Plaintiff "testified that she took care of all bills and
6  told the psychiatric consultative examination that she pays bills and can manage
7  funds; but, quite incredibly, she testified that she could not write out a check." (AR
8  at 17 (citation omitted).)  However, Plaintiff's statements regarding her ability to
9  manage her own funds has been consistent.  In an Adult Function Report form, she
10 indicated that she "pays bills," and can "count[] change," but does not "handle a
11 savings account" or use a "checkbook." (*Id.* at 127, 130.)  Similarly, during a
12 complete psychiatric evaluation, conducted on March 30, 2006, Plaintiff reported
13 that she "can handle bills." (*Id.* at 284, 286.)  During the administrative hearing,
14 Plaintiff testified that she knew how to pay bills "[w]ith a money order," (*id.* at 522),
15 but cannot "pay bills with a checkbook" because she does not "know how to fill a
16 check out." (*Id.* at 519; *see also id.* at 519-22.)  Given that Plaintiff also testified she
17 has an eighth grade education and that she was in "[s]pecial ed" classes "the whole
18 time" she was in school, (*id.* at 512), the Court fails to find her inability to write out
19 a check "incredible."

20       With respect to Plaintiff's daily activities, the Court, unlike the ALJ, does not
21 necessarily perceive a meaningful contradiction between Plaintiff's statement that
22 "her son does all the cooking but then [she] admitted she did some cleaning." (AR
23 at 17.)  At the hearing, Plaintiff testified that her son cooks, (*id.* at 523), unless she is
24 "by [her]self . . . [then she will] use the microwave, . . . like a TV dinner or
25 something like that" or make a sandwich. (*Id.* at 518, 523; *see also id.* at 127-129
26 (Adult Function Report, completed by Plaintiff, stating that she "sometimes"
27 prepares frozen dinners or sandwiches).)  Plaintiff then stated that she does "a little
28 bit" of house cleaning, such as "wash the bathroom down or wash a few dishes."

1  (*Id.* at 525.)  Accordingly, Plaintiff's statements appear to explain the division of

2  labor in her household and clarify the activities she performs on a regular basis, but

3  do not necessarily demonstrate an inconsistency, as the ALJ suggested.

4      Similarly, the ALJ discounted Plaintiff's subjective complaints because she

5  "has a current driver's license but said that she does not drive; yet she is able to

6  manage transportation."  (AR at 17.)  Again, the Court fails to find an incongruity

7  here.  Plaintiff testified that she does not "really care for driving" because of her

8  "mind," difficulty with traffic, and lack of ability to "pay attention to where [she is]

9  going."  (*Id.* at 520.)  Plaintiff's testimony is consistent with the record – *i.e.*, on

10  June 22, 2008, the consultative psychiatrist indicated that Plaintiff "was driven to the

11  office today."  (*Id.* at 181; *see also id.* at 284-86 (consultative examination, dated

12  March 30, 2006, indicating Plaintiff "gets rides from others, but she has a current

13  California driver license").)

14      In any event, the ALJ fails to demonstrate how Plaintiff's ability to perform

15  certain daily activities translates into an ability to work.  *See Gonzalez v. Sullivan*,

16  914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the

17  effect that ability to perform daily activities translated into the ability to perform

18  appropriate work); *Reddick*, 157 F.3d at 722 (only if a plaintiff's level of activity is

19  inconsistent with her alleged limitations will these activities have any bearing on

20  claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

21  2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has

22  carried on certain daily activities, such as grocery shopping, driving a car, or limited

23  walking for exercise, does not in any way detract from her credibility as to her

24  overall disability.").

25      Second, the ALJ erred to the extent he rejected Plaintiff's credibility based on

26  a lack of objective medical evidence.  Plaintiff provided sufficient medical evidence

27  of underlying impairments that were reasonably likely to cause the symptoms she

28  described.  For instance:

1        1.      Adult clinical assessment note, dated August 30, 2004, reported

2   Plaintiff had "current health problems" of hypertension, asthma, and headaches.

3   (AR at 337.)

4        2.      Treating physician progress note, dated June 10, 2005, indicated a

5   diagnosis of bronchial asthma.  (AR at 344.)

6        3.      A treatment note, dated February 5, 2008, indicated Plaintiff's history

7   of asthma.  (AR at 169.)

8        4.      A treatment note, dated February 24, 2008, stated that Plaintiff was

9   "seen by chiropractor" to work on her "neck pain."  (AR at 167.)

10        5.      A treatment note, dated August 23, 2008, reported a history of

11   migraines and asthma.  (AR at 161.)

12        6.      A treatment note, dated July 2, 2009, noted neck and shoulder pain and

13   Plaintiff's request to have her "asthma checked."  (AR at 443.)

14        Third, while the ALJ properly found Plaintiff's statements regarding her

15   ability to concentrate inconsistent with the record, (*compare* AR at 181-87, 284-88

16   *with id.* at 18, 261-67, 517), the Court remains unconvinced that the ALJ's decision

17   remains legally valid, despite the errors in the credibility analysis.  *Carmickle v.*

18   *Comm'r* , 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that the "relevant inquiry

19   . . . is whether the ALJ's decision remains legally valid," despite errors in the

20   credibility analysis).

21                                 **VI.**

22                 **REMAND IS APPROPRIATE**

23        This Court has discretion to remand or reverse and award benefits.  *McAllister*

24   *v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).  Where no

25   useful purpose would be served by further proceedings, or where the record has been

26   fully developed, it is appropriate to exercise this discretion to direct an immediate

27   award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004);

28   *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000),

*cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made.  On remand, the ALJ shall reconsider Plaintiff's subjective complaints and the resulting functional limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them.  In addition, the ALJ shall reassess the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions.  If necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations.  The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.[3/]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: December 6, 2011

_____

Hon. Jay C. Gandhi

United States Magistrate Judge

---

[3/]   In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions.  (*See* Joint Stip. at 4-10, 24-26.)